## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## NORFOLK SOUTHERN RAILROAD COMPANY V. THE GREENWICH CORPORATION AND OTHERS.

### March 21, 1918.

1. AMENDMENTS—*Substitution of New Party.*—An entirely new plaintiff cannot be substituted after it has become manifest that the original plaintiff could not maintain the action, the proper practice in such a case would have been for the plaintiff to ask to be allowed to suffer a non-suit before the jury retired, under section 3387 of the Code of 1904, and to have renewed the suit in the name of the proper plaintiff.

2. AMENDMENTS—*New Cause of Action—Misjoinder of Parties.*—At common law the courts had no power to allow an amendment to an existing pleading, introductive of a new and distinct cause of action.

3. AMENDMENTS—*Substitution of New Party—Sections 3259, 3260, of the Code of 1904, and Acts 1914, page 641—Corporation a Separate Entity from its Stockholders.*—Sections 3259, 3260, of the Code of 1904, and Acts 1914, page 641, plainly do not contemplate the substitution of entirely new plaintiffs, but are rather intended to apply to amendments involving amplified and supplemental statements of the original action, and in furtherance of its object. They were never intended to permit the substitution of a new cause of action. The circumstance that in the case at bar the substituted plaintiffs owned the stock of the original plaintiff, a corporation, did not affect the question. The corporation was a separate entity from its stockholders, with power to sue and be sued; and, certainly in a legal forum, they stood in the same relation to each other as any other litigants.

Error to a judgment of the Circuit Court of the city of Norfolk in an action of assumpsit. Judgment for plaintiffs. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Jas. G. Martin,* for the plaintiff in error.

*Terry* and *Strode,* for the defendants in error.

WHITTLE, P., delivered the opinion of the court.

We shall for convenience designate the original parties as they were in the circuit court, the plaintiff in error as defendant and the Greenwich Corporation as plaintiff.

The action was *assumpsit,* brought by the plaintiff against defendant to recover damages alleged to have been caused by delay in transit by defendant, or connecting carriers designated and selected by it, of a carload of spinach shipped from Greenwich station, Princess Anne county, Virginia, to the city of Boston, Massachusetts. The controlling question for determination is raised by the first assignment of error, and the view that we take of it renders it unnecessary to notice other assignments.

Some of the principal facts bearing upon the case appear from the following order entered by the circuit court during the progress of the trial: "This day came again the parties by their attorneys, and thereupon came a jury, to-wit: * * * who were sworn to well and truly try the issue joined, and thereupon the evidence being partly heard, the plaintiff asked leave of the court to amend its declaration by making J. R. Simpson and C. C. Hudgins, individually and as partners trading as Simpson & Hudgins, parties plaintiff * * *; and leave being given, the plaintiff's declaration is accordingly amended * * *; and thereupon the jury having further and fully heard the evidence * * * found a verdict in these words: 'We the jury find for the plaintiffs, Simpson & Hudgins, in the sum of $305.87 with interest at six per cent. per annum from

March 28, 1913, due to negligence on the part of the New York, New Haven and Hartford R. R.'"

Whereupon, defendant moved the court to set aside the verdict as contrary to the law and the evidence, and also to enter a judgment for the defendant *non obstante veredicto;* but the court overruled both motions and rendered judgment against the defendant for Simpson & Hudgins in accordance with the verdict. It further appeared from the evidence that Simpson & Hudgins owned practically all the stock of the Greenwich Corporation; and that the bill of lading was issued to them as consignors of the carload of spinach.

The action was brought against defendant as initial carrier under the Carmack amendment, which allows such action to the "lawful holder" of the bill of lading; and plaintiff not being the "lawful holder" of the bill of lading, of course, could not maintain the action. In these circumstances, the correct practice would have been for plaintiff to ask to be allowed to suffer a non-suit before the jury retired, under section 3387 of the Code; and to have renewed the suit in the name of the proper plaintiff. It will be observed that the ruling of the court, which is the ground of exception, did not involve the insertion of an *omitted* party or the *dropping* of a supernumerary, but the *substitution* of an entirely new plaintiff, after it had become manifest that the original plaintiff could not maintain the action. When the amendment was allowed there was a clear misjoinder; and this was shown by the verdict of the jury which the court approved. If the original plaintiff had been *dropped* by direct order of the court when the new plaintiff was admitted, then unquestionably an entirely *new case* would have been made by the amendment. Yet precisely the same result was attained by indirection through the medium of the verdict and judgment which ignored the original plaintiff. This departure from correct practice

involves this obvious incongruity: the jury which was sworn to try the issue joined between the Greenwich Corporation and the Norfolk Southern Railroad Company, rendered their verdict in favor of Simpson & Hudgins against defendant, between whom no issue had been joined which the jury was sworn to try. In the nature of things, a rule productive of such a result cannot be sound; if so, pleading would be a "delusion and a snare"—the means of perverting justice rather than promoting it.

Code procedure has not been adopted in this State; and "At common law the courts had no power to allow an amendment to an existing pleading, introductive of a new and distinct cause of action." 31 Cyc. 409. The same principle is thus stated by Burks in his work on Pleading and Practice: "Of course, a party is never permitted to make an entirely new case by his amendments." Burks' Pl. & Pr., 586. See, also, for a discussion of the subject of misjoinder and non-joinder of parties, Burks' Pl. & Pr., pp. 74, 75, 76, and section 312. It is also stated in the volume of Cyc. above cited, that even under the codes and practice acts, that "In a majority of the States the courts have established the doctrine that the powers conferred upon them, under their codes and practice acts, in respect to amendments which set up a new and distinct cause of action, are no greater than that existing at common law, and that they are not authorized to grant such amendments at any stage of the proceedings." 31 Cyc. 409, 410. See, also, p. 470, where it is said: "In some jurisdictions the only limitations upon the right to amend in an action at law is that there cannot be an entire change of parties plaintiff or defendant."

Our statutes, sections 3259, 3260, of the Code, and Acts 1914, p. 641, invoked to affirm the judgment, plainly do not contemplate the substitution of entirely new plaintiffs, but are rather intended to apply to amendments involving amplified and supplemental statements of the original action,

and in furtherance of its object. They were never intended to permit the substitution of a new cause of action. The circumstances that in this instance the substituted plaintiffs owned the stock of the Greenwich Corporation does not affect the question. The corporation was a separate entity from its stockholders, with power to sue and be sued; and, certainly in a legal forum, they stood in the same relation to each other as any other litigants.

For these reasons, the judgment must be reversed and the case remanded for further proceedings.

*Reversed.*