**CIRCUIT COURT OF FAIRFAX COUNTY**

Winchester Homes, Inc.

v.

Hoover Universal, Inc., et al.

Case No. (Law) 100865

BY JUDGE WILLIAM G. PLUMMER

January 6, 1992

This matter has come before the Court on a Joint Demurrer to the Second Amended Motion for Judgment and Bill of Particulars of Plaintiff Winchester Homes, Inc. ("Winchester"), a Joint Special Plea in Bar, and a Joint Motion for Sanctions filed by Defendants Chesapeake Corporation, Hoover Universal, Inc., Johnson Controls, Inc., Hoover Treated Wood Products, Inc., Mid-Atlantic Wood Preservers, Inc., Ply-Gem Industries, Inc., Timber Products Inspection, Inc., Osmose Wood Preserving, Inc., Applied Research Group, Inc., Reliance Wood Preservers, Inc,. and Allied Plywood Corporation.

### *Fraud*

Based upon arguments of counsel and having reviewed counsels' briefs, the Court sustained in open court the Defendants' demurrer as to Count IV, based on fraud, of Winchester's Second Amended Motion for Judgment. The Court hereby restates its opinion that Winchester has failed to allege fraud with the required specificity. *See*

*Tuscarora, Inc. v. B.V.A. Credit Corp.*, 218 Va. 849, 241 S.E.2d 778 (1978).

Additionally, Winchester has made no allegation whatsoever of any active misrepresentation by Defendants Johnson Controls, Inc., Reliance Wood Preserving, Inc., Mid-Atlantic Wood Preservers, Inc., Timber Products Inspections, Inc., or Allied Plywood Corporation.

Moreover, Winchester failed to allege that any Defendant actively misrepresented any material fact to any homeowner or that Winchester communicated the alleged misrepresentations to the homeowners. Although Winchester alleged that all of the Defendants fraudulently concealed material information from the homeowners, the Court finds that Winchester failed to allege any duty by the Defendants to disclose such information to the homeowners. Winchester has not alleged a relationship between the Defendants and the homeowners sufficient to impose such a duty.

Finally, the Court finds that an allegation of fraud is a personal cause of action which the homeowners could not assign to Winchester. Winchester's reference to Virginia Code § 8.01–26 is inapposite, as an assignment of anticipated proceeds of a court award under that provision is simply to assign a monetary expectancy; the statute does not permit assignment of the underlying cause of action.

### Virginia Consumer Protection Act

The Court also sustained the Defendants' demurrer to Count V of the Second Amended Motion for Judgment based on alleged violations of the Virginia Consumer Protection Act. *See* Va. Code Ann. §§ 59.1–196 to 59.1–207 (1987 & Supp. 1991). The Court found that the sales of FRTP between the Defendants and Winchester were not consumer transactions as contemplated by the Act. The Defendants' commercial transactions with Winchester do not fall within the ambit of the Act's restrictions on consumer transactions. Specifically, as sold by the Defendants, the FRTP was to be used as component parts in the construction of homes and not "primarily for personal, family or household purposes" as envisioned by the Act. *See* Va. Code Ann. § 59.1–198(A)(i) (1987 & Supp. 1991).

Further, a violation of the Virginia Consumer Protection Act, based on misrepresentation, provides a personal cause of action which the homeowners could not assign to Winchester. Attempted

assignments from the homeowners could not provide Winchester with standing to bring this action in their place.

### Special Plea in Bar - Breach of Warranty

The Defendants have filed a Joint Special Plea in Bar contending that claims concerning certain townhomes under Counts I, II, and III of the Second Amended Motion for Judgment are barred by the four-year statute of limitations for breach of warranty claims.

(a) *Breach of Implied Warranties*

Having heard oral arguments and upon reading the briefs of counsel, the Court sustains the Defendants' plea of the statute of limitations to Counts II and III of the Second Amended Motion for Judgment concerning alleged breaches of implied warranties. The Court finds that a four-year statute of limitations governs such claims grounded upon implied warranties, Va. Code Ann. § 8.2–725 (1991), and that the causes of action at bar accrued upon tender of delivery, which occurred, at latest, upon completion of the town-homes.

The Court further finds that Winchester had no assignments or subrogation rights at the time it filed its original Motion for Judgment. Winchester could not become subrogated to the rights of the homeowners until it fully discharged any obligation owing to the homeowners by having replaced or repaired the roof on any particular unit. The Court believes to be unfounded Winchester's argument that its mere inspection of any particular roof caused Winchester to become subrogated to the potential rights of the homeowners against the Defendants.

The original Motion for Judgment, therefore, did not toll the four-year statute of limitations; the first Amended Motion for Judgment, which Winchester filed on June 24, 1991, did not relate back to the original filing. *See Irvine v. Barrett*, 119 Va. 587, 592, 89 S.E. 904, 906 (1916). Consequently, the statute of limitations bars any implied warranty claim for townhome roofs completed more than four years prior to June 24, 1991, i.e., before June 24, 1987.

Moreover, the first Amended Motion for Judgment did not toll the statute of limitations for those townhomes for which Winchester had not yet obtained an assignment or repaired the roof as of June 24, 1991. The Court concludes that claims for which Winchester obtained assignments or had repaired roofs between June 24, 1991, and

September 16, 1991, were not deemed to be filed until September 16, 1991, the date Winchester filed its Second Amended Motion for Judgment. Consequently, the statute of limitations bars a claim on any such townhome which Winchester completed more than four years prior to September 16, 1991, i.e., before September 16, 1987.

The Court similarly concludes that Winchester has not properly alleged standing to bring suit concerning any townhome for which it had not yet acquired an assignment or subrogation rights as of September 16, 1991.

(b) *Breach of Express Warranties*

Concerning Count I, breach of express warranties, the Court sustains the Defendants' Special Plea in Bar as to Defendants Hoover Universal, Inc., Johnson Controls, Inc., Hoover Treated Wood Products, Inc., Mid-Atlantic Wood Preservers, Inc., Ply-Gem Industries, Inc., Timber Products Inspection, Inc., Reliance Wood Preservers, Inc., and Allied Plywood Corporation. The Court, however, overrules the Special Plea in Bar to Count I as to Defendants Osmose Wood Preserving, Inc., Chesapeake Corporation, and Applied Research Group, Inc., and finds that the alleged express warranties provided by these defendants must remain for factual inquiry.

Winchester contends that the causes of action for the alleged breaches of express warranties did not accrue upon delivery (at latest, upon completion of the townhome), but rather, upon discovery of the alleged breach of warranty. Winchester relies upon Virginia Code Section § 8.2–725, which provides that a cause of action for a breach of an express warranty of future performance of goods accrues upon discovery of the breach. Va. Code Ann. § 8.2–725(2) (1991).

The Court finds that as a matter of law, the alleged express warranties of Defendants Hoover Universal, Inc., Johnson Controls, Inc., Hoover Treated Wood Products, Inc., Mid-Atlantic Wood Preservers, Inc., Ply-Gem Industries, Inc., Timber Products Inspection, Inc., Reliance Wood Preservers, Inc., and Allied Plywood Corporation did not constitute express warranties of future performance. The Court has determined that these Defendants did not explicitly extend their alleged warranties to future performance. The Court stresses the absence of any specific guarantee or reference to a future time in the representations upon which Winchester relies. Accordingly, with regard to these eight defendants, the Special Plea in Bar to Count I

falls under the same analysis as Counts II and III, and the Courts sustains the Special Plea in Bar to Count I for the reasons and to the same extent as discussed above with regard to Counts II and III.

Concerning Osmose Wood Preserving, Inc., the Court cannot conclude as a matter of law that its alleged express warranty that "Flame Proof is impervious to attacks from rot and decay" and "will maintain its fire retardant properties *for the life of the structure . . .*" (emphasis added) does not constitute a warranty of future performance. Similarly, the Court finds that the alleged warranties by Chesapeake Corporation and Applied Research Group, Inc., that *"Lifetime* lumber withstands structural damage . . ." (emphasis added) require further factual inquiry. Consequently, the Court overrules the Special Plea in Bar to Count I as to these three defendants.

The Court notes that by their very name, the alleged *implied* warranties of Counts II and III cannot be *express* warranties of future performance.

### Standing

For the following reasons, the Court overrules the Defendants' demurrer in which they claimed that Winchester lacks standing. The Defendants demurred to the Second Amended Motion for Judgment in its entirety on the grounds that Winchester lacked standing through assignments and subrogation at the time it filed its original Motion for Judgment. Defendants contend that Winchester could not cure such defects by amending its pleadings to substitute the homeowners, through assignments and subrogation, as parties to this litigation.

Although the Court is convinced that Winchester did not have standing through assignments and subrogation when it filed the original Motion for Judgment, as Winchester had yet to receive an assignment from any homeowner and had not yet fully discharged any alleged obligation to any homeowner to repair and replace a roof, the Court granted Winchester leave to amend the pleading to add claims of assignment and subrogation. At that time, the Defendants made no objection to such leave to amend on the grounds that Winchester lacked standing by virtue of assignments or subrogation.

Moreover, the Court finds that the rationale underlying *Dillow v. Stafford*, 181 Va. 483 (1943), supports this Court's opinion that Winchester may assert standing in its Second Amended Motion for

Judgment. Allowing a substitution of plaintiffs, the *Dillow* Court stated:

> If the plaintiff in the amended declaration is attempting to assert rights and to enforce claims arising out of the same transaction, act, agreement, or allegations, however great may be the difference in the form of liability as contained in the amended, from that stated in the original declaration, it will not be regarded as for a new cause of action.

*Id.* at 488. Although doing so by virtue of assignments and subrogation, Winchester has attempted to enforce similar claims arising out of the same circumstances and allegations, i.e., the premature degradation and deterioration of the Defendants' FRTP.

The Defendants correctly note that *Dillow* involved an original plaintiff who had standing, while the case at bar does not. Relying on *The Chesapeake House on the Bay, Inc. v. Virginia Nat'l Bank*, 231 Va. 440 (1986), the Defendants conclude that to substitute a party with standing for a party lacking standing introduces a new cause of action, which the plaintiff cannot accomplish simply by amended pleadings.

Neither *Dillow* nor *Chesapeake House* are controlling, however, as both involve a substitution of parties. In the case at bar, however, Winchester has remained the same plaintiff throughout the pleadings and only the theory of recovery has changed. The claims confronting the Defendants have not changed and the Defendants face no element of surprise. Accordingly, the Court finds that Winchester has standing to assert claims by virtue of its allegations of assignments and subrogation.

### Sanctions

As expressed in open court, the Court postpones a determination concerning any and all motions for sanctions in this case until all other matters have been resolved.

### April 21, 1992

This matter came before the Court for hearing on February 3, 1992. The Court took under advisement Plaintiff Winchester Home, Inc.'s Motion for Reconsideration, Defendants' Joint Motion for Reconsideration, Winchester's Motion for Leave to Amend Second

Amended Motion for Judgment, and Defendants' Motion to Compel Discovery Responses. In addition, the Court has since received Winchester's Motion to Compel Discovery and will address that motion in this letter.

## Motions for Reconsideration

On January 6, 1992, the Court issued an opinion letter addressing, among other things, Defendants' Joint Demurrer to the Second Amended Motion for Judgment and Bill of Particulars and Defendants' Joint Special Plea in Bar. In response, Winchester and the Defendants moved for a reconsideration of the Court's rulings contained in that letter. Having heard arguments of counsel on February 3, 1992, and having reviewed their memoranda of law, the Court denies both Winchester's Motion for Reconsideration and Defendants' Joint Motion for Reconsideration and abides by its rulings issued in the January 6, 1992, opinion letter. The Court relies upon the reasoning set forth in that letter and upon its remarks from the bench at the February 3, 1992, hearing.

## Winchester's Motion for Leave to Amend

Winchester has filed a Motion for Leave to Amend Second Amended Motion for Judgment to add claims against all of the Defendants for indemnification and for an alleged violation of the Magnuson-Moss Warranty Act. As a court shall, upon sustaining a demurrer, liberally grant a plaintiff leave to amend in furtherance of the ends of justice, *see* Rule 1:8, the Court grants Winchester leave to file a Third Amended Motion for Judgment to include claims for indemnification and a violation of the Magnuson-Moss Warranty Act.

While these new claims may raise questions or issues similar to those already addressed in previous motions, and while this case has already been pending for a substantial period of time, the Defendants are not unduly prejudiced by Winchester's amendments. While similar to or related to previous claims, Winchester's new claims appear to state new or independent theories of recovery. In addition, the trial for this matter is set for more than six months away, providing sufficient time within which the Defendants may prepare a defense against Winchester's amended pleading. Moreover, similarities in issues raised by the new claims with those raised in earlier pleadings may facilitate the Defendants' ability to respond to such claims.

Leave to amend the Second Amended Motion for Judgment, however, does not otherwise affect the rulings issued by the Court in its January 6, 1992, opinion letter regarding claims set forth in the Second Amended Motion for Judgment. In particular, the Court abides by its opinion concerning Defendants' Joint Special Plea in Bar. Nevertheless, by granting leave to amend, the Court is not ruling on any potential statute of limitations defect concerning claims for indemnification. The Court notes that if Winchester did not discharge an obligation to a homeowner prior to when a statute of limitations may have run on an underlying claim that the homeowner may have had against the Defendants, Winchester would have no cause of action for indemnification for discharging an obligation. In that situation, Winchester could not benefit from the limitations period for a claim for indemnification as it would have no underlying right to indemnification.