PRESENT: Goodwyn, Mims, Powell, Kelsey, McCullough, and Chafin, JJ., and Koontz, S.J.

VACORP

v. Record No. 190356

MIASIA YOUNG, ET AL.

OPINION BY
JUSTICE STEPHEN R. McCULLOUGH
April 9, 2020

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Gregory L. Rupe, Judge

The School Board for the City of Richmond has contracted for coverage of its vehicles via a self-insurance risk pool managed by the Virginia Association of Counties Group Self-Insurance Risk Pool, or VACORP. Miasia Young, who was injured while riding a school bus, filed a declaratory judgment action seeking resolution of the scope of coverage with respect to the school board's uninsured/underinsured motorist coverage. She argued that the School Board's UM/UIM coverage was $1 million, as provided in the contract between the School Board and VACORP, and that the legislature has imposed a floor, not a cap, on UM/UIM coverage for entities that self-insure. VACORP responded that the interplay of several statutes imposes a cap on UM/UIM coverage in the amount of $50,000. The trial court agreed with Young. For the reasons noted below, we agree and affirm.

BACKGROUND

According to the allegations in the underlying tort suit, Miasia Young was riding as a passenger in a City of Richmond school bus when a car collided with the bus. Margaret Allen was driving the school bus. Clara Kelly was the driver of the car. Young filed suit against Kelly, Allen, and the City of Richmond School Board, seeking damages of $499,000 for her personal injuries, later increased to $1.2 million. Kelly had insurance from various sources

totaling $125,000. The City of Richmond School Board is self-insured through a self-insurance risk pool managed by VACORP.

The contract between the City of Richmond and VACORP provides UM/UIM coverage to anyone who is injured while "occupying" a "Covered Auto." A school bus qualifies as a "Covered Auto." The contract contains a limit of $1 million for coverage relating to an uninsured/underinsured motorist. The contract specifies that the fund administered by VACORP agrees "to pay all sums the Covered Person is legally entitled to recover as damages from the owner or driver of an Uninsured/Underinsured Motor Vehicle." Any person "Occupying a Covered Auto" is a "Covered Person." Young is a "Covered Person."

When VACORP and Young disagreed on the extent of the coverage available to the School Board for the City of Richmond under the UM/UIM provisions of its contract, Young filed a declaratory judgment action to settle the issue. The parties filed cross-motions for summary judgment. VACORP maintained that, by statute, $50,000 is the maximum amount of such coverage available. Young responded that these statutes set a minimum, not a cap, and that the maximum available is what is specified in the contract entered into by the School Board, namely, $1 million. The Circuit Court agreed with Young. We awarded VACORP an appeal from this decision.[1]

---

[1] VACORP's assigns the following two errors:

> I. The trial court erred when it granted Young's motion for summary judgment (and denied VACORP's motion for summary judgment) because Virginia Code § 22.1-194 limits the self-insurance for school boards to $50,000 in UM/UIM coverage.
>
> II. The trial court erred when it granted Young's motion for summary judgment (and denied VACORP's motion for summary judgment) because Virginia Code § 38.2-2206 prohibits UM/UIM limits from exceeding the liability limits.

ANALYSIS

VACORP contends that the interplay of several statutes compels the conclusion that its coverage is capped at $50,000. Young contests VACORP's reading of those statutes. We review the trial court's grant of summary judgment de novo. *Ricketts v. Strange*, 293 Va. 101, 106 (2017). We also review a trial court's construction of statutory provisions de novo. "[A]n issue of statutory interpretation is a pure question of law which we review de novo." *Conyers v. Martial Arts World of Richmond, Inc.*, 273 Va. 96, 104 (2007).

At the outset, we note that our decision in *Frederick Cty Sch. Bd. v. Hannah*, 267 Va. 231, 239 (2004), is not controlling on the question before us, namely, whether Code § 22.1-190 and Code § 22.1-194, among other statutes, provide a statutory cap of $50,000 on UM/UIM coverage, irrespective of any contrary contractual arrangements by the parties. We simply did not answer that question in *Hannah* because it was not before us. Instead, the case turned on whether the school board was required to obtain a certificate from the Commissioner of the Department of Motor Vehicles.

Under Code § 22.1-190, school boards must insure every vehicle unless the school board receives a certificate of self-insurance under Code § 22.1-194. Code § 22.1-190 provides in relevant part:

> A. Every vehicle shall be covered in a policy of liability and property damage insurance issued by an insurance carrier authorized to transact business in this Commonwealth, in the amounts of at least $50,000 for injury, including death, to one person; $500,000 for injury, including death, to all persons injured in any one accident; and $50,000 for damage, including destruction, to the property of any person, other than the insured. In addition, the policy of insurance shall provide coverage for loss or damage caused by an uninsured motorist in accordance with the provisions of § 38.2-2206 and in the amounts required by this section.

. . . .

> D. This insurance shall not be required in cases where pupils are transported in vehicles which are owned or operated by a county, city, town or school board which has qualified for and received a certificate of self-insurance from the Commissioner of the Department of Motor Vehicles, following a certification of financial responsibility equal to that required under subsection A of this section.

Nothing in the text of Code § 22.1-190 forbids a school board that has self-insured from obtaining a contract through a pool for more than the minimum amount of $50,000. Consequently, Code § 22.1-190 does not operate as a statutory cap for the school board's UM/UIM coverage.

VACORP also relies on Code § 22.1-194. That statute provides as follows:

> In case the locality or the school board is the owner, or operator through medium of a driver, of, or otherwise is the insured under the policy upon, a vehicle involved in an accident, the locality or school board shall be subject to action up to, but not beyond, the limits of valid and collectible insurance in force to cover the injury complained of or, in cases set forth in subsection D of § 22.1-190, up to but not beyond the amounts of insurance required under subsection A of § 22.1-190 and the defense of governmental immunity shall not be a bar to action or recovery.

VACORP contends that this statute establishes a limit of $50,000 on UM/UIM coverage. It reasons that because the School Board for the City of Richmond is self-insured under subsection D of § 22.1-190, it can be liable "up to but not beyond the amounts of insurance required under subsection A of § 22.1-190." In turn, subsection A of Code § 22.1-190 contemplates coverage of "at least $50,000 for injury."

We disagree with VACORP's proposed construction of Code § 22.1-194. As the circuit court noted, it is not clear whether the phrase "up to but not beyond the amounts of insurance required under subsection A of § 22.1-190" refers *exclusively* to the $50,000, and thus imposes a

4

cap, or if that phrase instead refers to "*at least* $50,000." If it is the latter, the school board could choose to obtain additional coverage. We have held that "the statute governing UM insurance 'was enacted for the benefit of injured persons, is remedial in nature, and is liberally construed so that the purpose intended may be accomplished.'" *USAA Cas. Ins. Co. v. Alexander*, 248 Va. 185, 194 (1994). This statutory canon of construction supports interpreting the statute as allowing school boards to contract for more UM/UIM coverage than the $50,000 floor.[2] Moreover, our common-law tradition counsels that courts "are not lightly to interfere" with lawful exercises of the "freedom of contract." *Commonwealth Div. of Risk Mgmt. v. Virginia Ass'n of Counties Group Self Insurance Risk Pool*, 292 Va. 133, 143 (2016). The contract between VACORP and the School Board by its plain terms contemplates $1 million in UM/UIM coverage, and it says nothing about a $50,000 cap.

In addition, through its contract with VACORP, the School Board for the City of Richmond has obtained "valid and collectible insurance" for UM/UIM in the amount of $1 million. The phrase "valid and collectible insurance" does not distinguish between insurance purchased through a commercial insurance carrier and insurance obtained through a contract with a self-insurance risk pool. An insurance contract through a risk pool is "valid and collectible" insurance. See *Frederick Cty Sch. Bd. v. Hannah*, 267 Va. 231, 239 (2004) ("While not the proceeds of an insurance 'policy,' in the strictest sense of that term, the insurance protection provided by the Pool is nonetheless 'valid and collectible insurance in force to cover

---

[2] In *Catron v. State Farm Mut. Auto. Ins. Co.*, 255 Va. 31 (1998), citing the exemption found in Code § 46.2-368, we stated that "[t]he legislature has placed self-insurers in a favored status." *Id*. at 38. That descriptive statement is certainly correct. In *Catron*, we proceeded to analyze the language of the applicable statutes to discern legislative intent. In this instance, our reading of the statutes leads us to conclude that the legislature did not intend to foreclose the ability of a school board to contract for coverage beyond the minimum statutory floor.

the injury complained of.'").  Had the School Board not obtained a contract through an insurance pool, and had instead chosen to be purely self-insured, its exposure would be, in the words of Code § 22.1-194 "up to but not beyond the amounts of insurance required under subsection A of § 22.1-190," namely, $50,000.

Finally, VACORP also relies on Code § 46.2-368(B).  It provides that:

> The Commissioner [of the Department of Motor Vehicles] may, in his discretion and on the application of such a person, issue a certificate of self-insurance when he is reasonably satisfied (i) that the person has and will continue to have financial ability to respond to a judgment as provided in this chapter, obtained against the person, arising out of the ownership, maintenance, use, or operation of his motor vehicles and (ii) that the certificate provides for protection against the uninsured or underinsured motorist to the extent required by § 38.2-2206.  However, protection against the uninsured or underinsured motorist required under this section shall not exceed the financial requirements of § 46.2-472 and shall be secondary coverage to any other valid and collectible insurance providing the same protection which is available to any person otherwise entitled to assert a claim to such protection by virtue of this section.

This statute specifies that "protection against the uninsured or underinsured motorist *required* under this section *shall not exceed*" the $50,000 minimum provided in Code § 46.2-472.  Again, nothing precludes a school board from contracting for more UM/UIM coverage than the strict minimum.

We are unable to discern why the General Assembly would want to foreclose the ability of a self-insured school board to voluntarily provide for coverage beyond the minimum $50,000.  Here, for any number of sound reasons – to protect its drivers or to provide additional coverage for the students in its care – the School Board for the City of Richmond chose to do so.  The remedial construction afforded to UM/UIM statutes, the default principle affording broad freedom of contract, and our prior interpretation of the phrase "valid and collectible insurance,"

6

lead us to conclude that the $1 million in UM/UIM coverage the School Board contracted for is the amount of available UM/UIM coverage.

## CONCLUSION

We will affirm the judgment of the trial court.

*Affirmed.*